**Robert GODOY, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 99–3334.**

United States Court of Appeals, Federal Circuit.

Aug. 7, 2000.

Augustin Rivera, Jr., Barger Hermansen, McKibben & Villarreal, L.L.P., for petitioner.

Ming–Yuen Meyer–Fong, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. On the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; Harold D. Lester, Jr., Assistant Director; and Brian M. Simkin, Attorney. Of counsel on the brief was Murray M. Meeker, Senior Attorney, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Before NEWMAN, Circuit Judge, SMITH, Senior Circuit Judge, and SCHALL, Circuit Judge.

SCHALL, Circuit Judge.

Robert Godoy petitions for review of the final decision of the Merit Systems Protection Board ("Board") that affirmed the reconsideration decision of the Office of Personnel Management ("OPM") refusing to waive the obligation to repay a mistaken overpayment of retirement benefits. *See Godoy v. Office of Personnel Management,* 82 M.S.P.R. 160 (1999). We affirm.

## BACKGROUND

Mr. Godoy retired from a position with the U.S. Postal Service on November 20, 1992, after 23 years of federal civil service and, before that, 14 years of military service. At the time of his retirement, OPM erroneously computed the amount of his civil service annuity, which resulted in an overpayment of benefits during the period December 1, 1992 through April 30, 1997.

By letter dated March 26, 1997, OPM informed Mr. Godoy that his civil service annuity had been erroneously calculated. Specifically, OPM explained that it had included his years of military service in the computation of his civil service annuity, even though he also was receiving military retirement pay.[1] OPM advised Mr. Godoy that he could elect to waive his military retirement pay and have his military service used in the computation of his civil service annuity, in which case his civil service annuity would not be reduced. Otherwise, OPM advised, it would have to recompute his civil service annuity to eliminate his military retirement pay, which would have the effect of reducing his annuity. Mr. Godoy elected not to waive his military retirement pay.

In an initial decision dated April 15, 1997, OPM again informed Mr. Godoy of the error in the calculation of his civil service annuity and told him that, as a result of the error, he had been overpaid $46,273.00. OPM sought repayment, and established a schedule for collection of the overpayment involving 80 monthly payments of $575.16 and one payment of $260.20. Mr. Godoy requested reconsideration. In its reconsideration decision, OPM affirmed its initial decision, finding that Mr. Godoy was not at fault for the overpayment but that, based on the evidence of record, recovery would not be against equity and good conscience.

Mr. Godoy appealed to the Board, challenging OPM's denial of his request for waiver of the repayment obligation. In an initial decision dated November 13, 1997, the administrative judge to whom the case was assigned ("AJ") affirmed OPM's determination that Mr. Godoy had been overpaid $46,273.00; he also found that recovery would not be against equity and good conscience. The AJ nevertheless reversed OPM's refusal to waive part of the overpayment based upon the "age-of-debt" rule set forth in OPM's 1987 Policy Guidelines,

which were in effect at the time Mr. Godoy retired. *See Godoy v. Office of Personnel Management*, No. DA–831M–97–0552–I–1 (Nov. 13, 1997).

The age-of-debt rule, as stated in OPM's 1987 Policy Guidelines, provided that "recovery of that portion of a *without-fault* individual's overpayment debt incurred more than 3 years prior to the date of the initial overpayment notice to the debtor will be deemed to be inequitable." *Id.*, slip op. at 8 (quoting OPM 1987 Policy Guidelines). The age-of-debt rule was revoked by OPM on November 4, 1993. OPM explained its reason for revoking the rule as follows:

> [The age-of-debt rule] inappropriately restrict[s] OPM's ability to "aggressively recover" debts as required by the Federal Claims Collection Standards and, thus [is] out of step with the Government's debt collection policy. In some cases, the "Age–of–Debt Rule" had resulted in waiver of part of the debt even though the debtor is financially able to repay it and did not rely to his or her detriment on OPM's overpayment.... To avoid these "windfalls," we are revoking [this] self-imposed time limitation[ ]. Determinations will be made on a case-by-case basis by weighing the effect of each collection on the circumstances of the debtor under the remaining waiver criteria.

Even though the age-of-debt rule was revoked approximately 11 months after Mr. Godoy began receiving monthly overpayments, the AJ reasoned that the version of OPM's Policy Guidelines in effect at the time of Mr. Godoy's retirement should govern his later overpayment dispute and, therefore, ordered OPM to reduce the amount to be repaid to conform with the age-of-debt rule. In reaching this result, the AJ relied on *Metcalf v. Office of Personnel Management*, 73 M.S.P.R. 215, 222 (1997). Thus, the AJ ruled that Mr. Go-

---

1. Under 5 U.S.C. § 8332(c)(2) (1996), an individual who is receiving military retirement pay may not receive credit for the period of military service in the computation of a civilian retirement annuity unless certain conditions not applicable to Mr. Godoy are met.

doy was entitled to a partial waiver of the overpayment in accordance with the age-of-debt rule.

OPM petitioned the Board for review of the initial decision. On May 7, 1999, the Board granted the petition, reversed the initial decision with respect to the age-of-debt issue, and affirmed OPM's reconsideration decision in full. *See Godoy*, 82 M.S.P.R. at 163. In reaching its decision, the Board reexamined its prior decision in *Metcalf*, which had applied the version of OPM's Policy Guidelines in effect at the time of an individual's retirement to control a later overpayment dispute. It also reexamined its prior decision in *Steffel v. Office of Personnel Management*, 78 M.S.P.R. 192 (1998), which had applied the age-of-debt rule (which had been in effect at the time of retirement) to waive collection of an overpayment, even though the rule had been revoked before OPM discovered the overpayment. The Board reasoned that "OPM revoked the age-of-debt rule, which only applies to debts more than three years old, before the rule was even triggered with respect to [Mr. Godoy]." *Godoy*, 82 M.S.P.R. at 163. The Board "discern[ed] no basis to hold OPM to a rule the terms of which were never satisfied before it was revoked" *Id.* Therefore, the Board found the age-of-debt rule inapplicable to Mr. Godoy's case, and overruled *Metcalf* and *Steffel* to the extent they were inconsistent with its holding.[2] *See id.* This appeal followed.

## DISCUSSION

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c); *Hayes v. Department of*

*the Navy*, 727 F.2d 1535, 1537 (Fed.Cir. 1984).

Mr. Godoy argues that OPM's revocation of the age-of-debt rule was improperly applied retroactively to his situation. Rather, he contends, his dispute concerning the recovery of his overpayment should be governed by the rules in effect at the time of his retirement. Because the age-of-debt rule was in effect at the time of his retirement, it should apply.

For its part, the government responds that OPM's revocation of the age-of-debt rule was not applied retroactively in this case. It argues that the Board's decision not to apply the rule did not have retroactive effect because the conduct that would have triggered the rule—receipt of overpayments more than three years prior to the initial overpayment notice—did not occur before the rule was revoked. It also argues that the Board's decision not to apply the age-of-debt rule did not have retroactive effect because Mr. Godoy did not show that he reasonably relied upon the rule, or that the Board's decision disrupted his settled expectations.

We agree with the government that this case does not involve the retroactive application of OPM's revocation of the age-of-debt rule. In *Travenol Laboratories, Inc. v. United States*, 118 F.3d 749 (Fed.Cir. 1997), we discussed the approach that is to be followed in determining whether application of a statute to certain facts constitutes retroactive application of the statute. In so doing, we noted the formulation of the First Circuit: " 'The determination of whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date.' " *Id.* at 752 (quoting *McAndrews v. Fleet Bank of Mass., N.A.*, 989 F.2d 13, 16 (1st Cir.1993)). We believe this method of analysis is appropriate in determining

---

**2.** The Board "reserve[d] for an appropriate future appeal the question of whether an annuitant who received an overpayment more than three years before OPM revoked the age-of-debt rule is entitled to relief from collection based on the rule." *Godoy*, 82 M.S.P.R. at 163.

whether OPM's revocation of the age-of-debt rule was given improper retroactive application in this case. *Cf. Pine Tree Med. Assocs. v. Secretary of Health & Human Servs.*, 127 F.3d 118 (1st Cir.1997) (holding application of agency guidelines for designating geographic areas as "medically underserved" not to be retroactive, even though appellant filed its application before effective date of guidelines, because act of filing did not trigger application of guidelines). Accordingly, we must look to the date of the triggering or operative event to determine whether OPM's revocation of the age-of-debt rule was retroactively applied in Mr. Godoy's case. *See Travenol Labs.*, 118 F.3d at 753.

 OPM revoked the age-of-debt rule on November 4, 1993, approximately 11 months after Mr. Godoy retired. By its terms, the rule only applied to overpayments that were made "more than 3 years prior to the date of the initial overpayment notice to the debtor...." On November 4, 1993, Mr. Godoy did not meet the criteria for invocation of the rule. At that time, having only retired on November 20, 1992, he could point to no overpayments that he had received "more than 3 years prior to the date of the initial overpayment notice to the debtor" because no overpay-ment notice was issued to him until April 15, 1997. Thus, no new legal consequences attached to the events which took place before OPM repealed the age-of-debt rule. Significantly, a statute does not operate retrospectively "merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *see Lowry v. Secretary of Health & Human Servs.*, 189 F.3d 1378, 1380–81 (Fed.Cir. 1999). We also find significant the fact that Mr. Godoy did not rely on the age-of-debt rule when he retired. *See Goodyear Tire & Rubber Co. v. Department of Energy*, 118 F.3d 1531, 1537 (Fed.Cir.1997) (stating that a party's reliance on existing law is a matter to be considered in determining whether a statute has had a "retroactive effect").

For the foregoing reasons, the decision of the Board is affirmed.

*AFFIRMED*

### COSTS

Each party shall bear its own costs.